**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**EMMANUEL COFFY,**
 an individual,

    **Plaintiff,**　　　　　　　　　　**CASE NO.:**

v.

**UNITED PARCEL SERVICE, INC.,**
 a foreign Corp.,

    **Defendant.**
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, EMMANUEL COFFY (hereinafter, "Plaintiff" or "Coffy") by and through his undersigned counsel, sues Defendant, UNITED PARCEL SERVICE, INC. (hereinafter, "Defendant" or "UPS") pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*. ("Title VII"), the Florida Civil Rights Act of 1992, Section 760.10 *et seq*. ("FCRA"), 42 U.S.C. §1981 ("§1981") and the Family and Medical Leave Act, 29 U.S.C. §2601, *et. seq*. ("FMLA"), to redress Defendant's racial and national origin discrimination, as well as retaliation against Plaintiff and in support thereof states the following:

**PARTIES, JURISDICTION AND VENUE**

1. The Plaintiff, EMMANUEL COFFY, is a resident of Volusia County, Florida at all times pertinent to this matter and is an African American who was born in the nation of Haiti.

2. Defendant, UNITED PARCEL SERVICE, INC., is a package delivery company that provides services on a national and international basis and provides such services through multiple locations, including a facility that it operates in Seminole County, Florida at all times relevant to this action.

1

3. Venue is proper in this District because Defendant is located and operates in Seminole County, Florida and Plaintiff's claims accrued in said County.

4. This Court has subject matter jurisdiction over the Plaintiff's claims because this action arises under federal laws, Title VII, §1981 and the FMLA. Likewise, this Court has pendent jurisdiction over Plaintiff's state claims under the FCRA.

5. Plaintiff was employed by the Defendant as a driver, making deliveries and related services on behalf of Defendant.

6. Defendant was and is at all times relevant hereto an "employer" as defined by Title VII, the FMLA and the FCRA.

7. At all relevant times, Defendant employed more than 50 people within a 75-mile radius.

8. Plaintiff was at all times relevant hereto an eligible employee as defined by the FMLA.

9. Plaintiff has performed all conditions precedent necessary to the maintenance of this action, including the timely filing of a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") and receipt of a Notice of Right to Sue from same with respect to said charge and the timely filing of this action.

## FACTUAL ALLEGATIONS

10. Plaintiff Coffy is an African American man who was born in Haiti and subsequently moved to the United States at age five (5).

11. Coffy had been employed with UPS since August 6, 2012, working as a full-time delivery driver since July of 2017, out of the Defendant's Longwood, Florida facility until his most recent illegal employment termination on or about May 16, 2022.

12. Prior to his promotion to a full-time driver Coffy had been working multiple positions, including as a loader and in all of the other areas of production where UPS was short staffed. However, Coffy's goal and attempts to become a full-time driver were impeded and prevented by certain managers based upon discriminatory attitudes pertaining to the Plaintiff's race/color and national origin.

13. Based upon the foregoing Coffy contacted Defendant's corporate office with his concerns that he was being subjected to the above discriminatory treatment because of his being a Haitian Black man. Likewise, Coffy also filed a discrimination complaint with the EEOC based upon concerns of such disparate treatment by division manager Julius Trip Gwynn and center manager Steve Jones.

14. Plaintiff had performed his job duties in a fully satisfactory manner during his employment with Defendant.

15. Regardless, Coffy was consistently subjected to an ongoing pattern of hostile, discriminatory and retaliatory treatment and scrutiny by the foregoing managers and management staff influenced and under the supervision of managers Gwynn and Jones, among others.

16. Such illegally motivated conduct included regularly subjecting Plaintiff to undue scrutiny and unwarranted accusations and disciplinary actions based upon fabricated allegations of poor performance, dishonesty, and unprofessional conduct. Defendant would disregard actual factual information in favor of subjecting Plaintiff to such harassing accusations and discipline.

17. Moreover, reflecting the level of hostility, intimidation, harassment and disregard for Plaintiff's rights is the fact that Defendant terminated Plaintiff's employment and then rehired him approximately nine (9) times within about a five (5) year period.

18. Coffy would challenge such terminations and ultimately have these illegally motivated decisions reversed through union appeals and other such actions until his final termination in May of 2022.

19. In addition, Coffy was consistently filing grievances based upon the Defendant's consistent pattern of discriminatory conduct by his supervisors and managers.

20. Defendant's disparate treatment of Coffy included managers following him for unwarranted reasons with the sole goal being to create some basis to discipline and harass the Plaintiff in retaliation for his engaging in ongoing protected activity.

21. On March 23, 2021, Plaintiff actually caught supervisor Truog Corbit following him for such illegitimate reasons when he went to use a bathroom at a Walmart while on a lunch break and, to his surprise noticed Corbit hiding behind a stall so that Coffy wouldn't see him. Plaintiff approached Corbit and asked him if he follows all his drivers to the bathroom to sabotage their career.  A confident Corbit just laughed in Coffy's face, knowing that he would not suffer any consequences for his inappropriate actions.

22. Six (6) days later, on March 29, 2021, Defendant terminated Plaintiff's employment for alleged dishonesty, falsely claiming that he stole six (6) minutes of time by conducting personal business while on the clock when he went to a Walmart and bought some personal items.

23. Coffy subsequently was reinstated on or about May 19, 2021, after evidence failed to demonstrate that Plaintiff had violated any policy, and also showed supervisor Corbit stalking the Plaintiff.

24. Soon thereafter Plaintiff applied for and was granted leave under the FMLA due to the impending birth of one of his children. Coffy was approved for such leave from June 7, 2021, until August 20, 2021.

25. Despite Coffy being out on approved FMLA leave, around July of 2021 his supervisors began to call him and threaten that he needed to return to work, including supervisors Adam Pranke and Willy Faison who both threatened to terminate him if he did not return to work within forty-eight (48) hours on or about August 2, 2021. They ignored Plaintiff's pleas not to force him to return based upon his approved FMLA leave.

26. In addition, Plaintiff was also contacted by a fellow driver named Phillip Baylou who stated he was doing so at the behest of supervisor Corbit to see when he was coming to work.

27. Based upon Defendant's threats and intimidation Coffy capitulated and returned to work on August 4, 2021; over two (2) weeks before his leave was to end.

28. He was greeted by co-workers in the office and stated that he was there to work but was immediately confronted by Corbit who stated that there was no work for him, falsely claiming that nobody knew he was returning.

29. Supervisor Juwan Byrd then offered to let Plaintiff work for his group but Corbit again denied Plaintiff the right to work with no basis.

30. Plaintiff then continued to explain to Corbit that his rights had been violated in the first place regarding his FMLA leave.

31. A hostile and angry Corbit then began walking aggressively walking towards Coffy and as he came close to the Plaintiff began yelling falsely that Coffy was touching him, despite numerous witnesses who could see that this was untrue.

32. Unbeknownst to Coffy, Corbit had contacted the police at approximately 4:00 p.m. on August 4, 2021, for an alleged assault that supposedly occurred at 9:00 a.m. that morning.

33. When Coffy arrived at work on August 5, 2021, he was met by police officers who escorted him off campus. He was subsequently questioned by the police officers who would ultimately exonerate him based, in part, on the witness statements of co-workers, including supervisor Juwan Byrd and a fellow driver that corroborated Plaintiff's factual statement of the underlying events.

34. Despite being exonerated by law enforcement, Defendant terminated Plaintiff's employment again on or about August 18, 2021, claiming that he had engaged in unprovoked physical violence.

35. Coffy was subsequently reinstated again in September of 2021, based upon the actual underlying facts that were revealed through his union appeal process.

36. Based upon the ongoing and continuous harassment, discrimination and retaliation that Plaintiff was consistently subjected to, he filed another charge of discrimination with the EEOC on or about March 2, 2022.

37. Despite his new discrimination charge Defendant's harassment, discrimination and retaliation of Coffy continued by certain managers and supervisors.

38. On or about May 6, 2022, while Plaintiff was on his lunch break, supervisor Collin would not allow Coffy to go to the bathroom utilizing his truck as the place to do so; a common practice.

39. Plaintiff made it known to Collin his intention, yet the supervisor stopped Coffy from closing the door with Collin's elbow. Collin then falsely alleged that Plaintiff had assaulted him with the door.

40. Collin subsequently contacted the division manager, Julius Trip Gwynn, who had consistently supported the harassment, discrimination and retaliation of Coffy. Gwynn told Collin to call the police and file a report of assault; a false accusation.

41. After the police had arrived, they took Collin's statement and asked him if he was injured and needed medical attention, to which Collin replied to no.

42. Defendant thereafter terminated Coffy's employment a ninth (9th) time on May 16, 2022, again for alleged unprovoked violence despite the lack of evidence.

43. Coffy's numerous complaints, grievances and notice to Defendant that he had been subjected to such illegal conduct was ignored throughout by Defendant.

44. Defendant's asserted reasons for subjecting Plaintiff to such disparate, retaliatory and discriminatory treatment were pretextual and were motivated by his race, color, national origin, as well as the fact that he engaged in protected speech in opposing the discrimination.

45. Defendant knew or should have known of the foregoing illegal discrimination and retaliation in Coffy's work environment.

46. Plaintiff has been damaged as a direct and proximate result of Defendant's illegal actions.

47. Plaintiff has been required to retain undersigned counsel to represent him in this matter and has agreed to pay a reasonable fee for said service.

## COUNT I
## DISCRIMINATION BASED UPON RACE/COLOR
## IN VIOLATION OF TITLE VII

48. Plaintiff realleges Paragraphs 1 through 47 as if fully set forth herein.

49. Plaintiff belongs to a protected group (race/color).

50. Plaintiff was subjected to unwelcome disparate treatment by Defendant based upon race and color when compared to non-African American co-workers.

51. Such discriminatory treatment unreasonably interfered with Plaintiff's work environment, among other things.

52. Defendant's discrimination of Plaintiff violated Title VII by subjecting Plaintiff to a discriminatory work environment, which had the purpose or effect of altering the terms and conditions of Plaintiff's employment.

53. Plaintiff suffered tangible job detriment by Defendant's pervasive racial discrimination.

54. Defendant is liable for all tangible job detriment suffered by Plaintiff and all racial discrimination engaged in by its supervisory personnel. Defendant is also liable for all other racial discrimination against Plaintiff because Defendant knew or should have known of the racial discrimination against Plaintiff and failed to take prompt remedial action that was reasonably calculated to prevent or end the harassment.

55. Plaintiff has been damaged by the conduct of Defendant.

**WHEREFORE**, Plaintiff requests this Honorable Court to:

A. Enjoin Defendant from engaging in any employment practice violative of Title VII;

B. Grant trial by jury and a judgment requiring Defendant to pay to Plaintiff any back pay found to be due and owing at the time of trial, and prejudgment interest thereon;

C. Award Plaintiff compensatory damages;

D. Award Plaintiff punitive damages;

E. Award Plaintiff back benefits;

F. Grant Plaintiff costs and an award of reasonable attorney's fees under Title VII; and

G. Grant Plaintiff any other relief that this Court deems just and equitable.

## COUNT II
## DISCRIMINATION BASED UPON RACE/COLOR
## IN VIOLATION OF THE FCRA

56. Plaintiff realleges Paragraphs 1 through 47 as if fully set forth herein.

57. Plaintiff belongs to a protected group (race/color).

58. Plaintiff was subjected to unwelcome disparate treatment by Defendant based upon race and color when compared to non-African American co-workers.

59. Such discriminatory treatment unreasonably interfered with Plaintiff's work environment, among other things.

60. Defendant's discrimination of Plaintiff violated the FCRA by subjecting Plaintiff to a discriminatory work environment, which had the purpose or effect of altering the terms and conditions of Plaintiff's employment.

61. Plaintiff suffered tangible job detriment by Defendant's pervasive racial discrimination.

62. Defendant is liable for all tangible job detriment suffered by Plaintiff and all racial discrimination engaged in by its supervisory personnel. Defendant is also liable for all other racial discrimination against Plaintiff because Defendant knew or should have known of the racial discrimination against Plaintiff and failed to take prompt remedial action that was reasonably calculated to prevent or end the harassment.

63. Plaintiff has been damaged by the conduct of Defendant.

**WHEREFORE**, Plaintiff requests this Honorable Court to:

A. Enjoin Defendant from engaging in any employment practice violative of the FCRA;

B. Grant trial by jury and a judgment requiring Defendant to pay to Plaintiff any back pay found to be due and owing at the time of trial, and prejudgment interest thereon;

C. Award Plaintiff compensatory damages;

D. Award Plaintiff punitive damages;

E. Award Plaintiff back benefits;

F. Grant Plaintiff costs and an award of reasonable attorney's fees under the FCRA; and

G. Grant Plaintiff any other relief that this Court deems just and equitable.

## COUNT III
## VIOLATION OF 42 U.S.C. § 1983 BY ENGAGING IN RACE DISCRIMNATION IN CONTRAVENTION OF SECTION 1981

64. Plaintiff realleges Paragraphs 1 through 47 as if fully set forth herein.

65. Plaintiff was discriminated against with respect to the terms, conditions and privileges of employment by Defendant because of his race, including denying him the opportunity to work and earn income, improperly calculating accrued pension benefits, among other things.

66. Defendant's discriminatory conduct was taken under color of state law and in direct violation of Section 1981.

67. Plaintiff has been damaged as a direct and proximate result of Defendant's illegal employment practices.

**WHEREFORE**, Plaintiff requests this Honorable Court to:

A. Enjoin Defendant from engaging in any employment practice violative of Section 1981;

B. Grant trial by jury and a judgment requiring Defendant to pay to Plaintiff any back pay found to be due and owing at the time of trial and prejudgment interest thereon;

C. Award Plaintiff an entitlement to back benefits;

D. Award Plaintiff compensatory damages;

E. Award Plaintiff punitive damages;

F. Grant Plaintiff costs and an award of reasonable attorney's fees under Section 1981; and

G. Grant Plaintiff any other relief that this Court deems just and equitable.

## COUNT IV
## DISCRIMINATION BASED UPON NATIONAL ORIGIN
## IN VIOLATION OF TITLE VII

68. Plaintiff realleges Paragraphs 1 through 47 as if fully set forth herein.

69. Plaintiff belongs to a protected group (national origin).

70. Plaintiff was subjected to unwelcome disparate treatment by Defendant based upon his Haitian national origin when compared to non-Haitian co-workers.

71. Such discriminatory treatment unreasonably interfered with Plaintiff's work environment, among other things.

72. Defendant's discrimination of Plaintiff violated Title VII by subjecting Plaintiff to a discriminatory work environment, which had the purpose or effect of altering the terms and conditions of Plaintiff's employment.

73. Plaintiff suffered tangible job detriment by Defendant's pervasive national origin discrimination.

74. Defendant is liable for all tangible job detriment suffered by Plaintiff and all national origin discrimination engaged in by its supervisory personnel. Defendant is also liable for all other national origin discrimination against Plaintiff because Defendant knew or should have known of the national origin discrimination against Plaintiff and failed to take prompt remedial action that was reasonably calculated to prevent or end the harassment.

75. Plaintiff has been damaged by the conduct of Defendant.

**WHEREFORE**, Plaintiff requests this Honorable Court to:

A. Enjoin Defendant from engaging in any employment practice violative of Title VII;

B. Grant trial by jury and a judgment requiring Defendant to pay to Plaintiff any back pay found to be due and owing at the time of trial, and prejudgment interest thereon;

C. Award Plaintiff compensatory damages;

D. Award Plaintiff punitive damages;

E. Award Plaintiff back benefits;

F. Grant Plaintiff costs and an award of reasonable attorney's fees under Title VII; and

G. Grant Plaintiff any other relief that this Court deems just and equitable.

## COUNT V
## DISCRIMINATION BASED UPON NATIONAL ORIGIN
## IN VIOLATION OF THE FCRA

76. Plaintiff realleges Paragraphs 1 through 47 as if fully set forth herein.

77. Plaintiff belongs to a protected group (national origin).

78. Plaintiff was subjected to unwelcome disparate treatment by Defendant based upon his Haitian national origin when compared to non-Haitian co-workers.

79. Such discriminatory treatment unreasonably interfered with Plaintiff's work environment, among other things.

80. Defendant's discrimination of Plaintiff violated the FCRA by subjecting Plaintiff to a discriminatory work environment, which had the purpose or effect of altering the terms and conditions of Plaintiff's employment.

81. Plaintiff suffered tangible job detriment by Defendant's pervasive national origin discrimination.

82. Defendant is liable for all tangible job detriment suffered by Plaintiff and all national origin discrimination engaged in by its supervisory personnel. Defendant is also liable for all other national origin discrimination against Plaintiff because Defendant knew or should have known of the national origin discrimination against Plaintiff and failed to take prompt remedial action that was reasonably calculated to prevent or end the harassment.

83. Plaintiff has been damaged by the conduct of Defendant.

**WHEREFORE**, Plaintiff requests this Honorable Court to:

A.    Enjoin Defendant from engaging in any employment practice violative of the FCRA;

B.    Grant trial by jury and a judgment requiring Defendant to pay to Plaintiff any back pay found to be due and owing at the time of trial, and prejudgment interest thereon;

C.    Award Plaintiff compensatory damages;

D.    Award Plaintiff punitive damages;

E.    Award Plaintiff back benefits;

F.  Grant Plaintiff costs and an award of reasonable attorney's fees under the FCRA; and

G.  Grant Plaintiff any other relief that this Court deems just and equitable.

## COUNT VI
## FMLA INTERFERENCE UNDER 29 U.S.C. §2615

84. The Plaintiff repeats each and every allegation of paragraphs 1-47 as if fully set forth herein at length.

85. Under 29 U.S.C. §2612, an eligible employee shall be entitled to a total of twelve (12) workweeks of leave for the birth or adoption of a child; to care for a child, spouse, or parent with a serious health condition; or because of a serious health condition that makes the employee unable to perform the functions of the employee's position.

86. An eligible employee is defined in the statute as "an employee who has been employed…for at least 12 months by the employer" and who has at least 1,250 hours of service with such employer during the previous 12-month period" 29 U.S.C. § 2611(2)(A).

87. At all times of Coffy's employment relevant hereto, Coffy was an *eligible employee*, because he had been employed by Defendant for at least twelve months and had accumulated over 1,250 hours of service with Defendant during the previous 12-month period.

88. Under 29 U.S.C. §2615, it is unlawful for an employer to *interfere with, restrain, or deny the exercise of or attempt to exercise*, any rights provided under the FMLA.

89. As discussed above, Defendant knowingly interfered with Plaintiff's attempt to take his certified medical leave under the FMLA.

90. The unlawful employment practices complained of herein and the actions of Defendant

its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights in violation under 29 U.S.C. §2612.

91. As result of the Defendant's aforementioned actions, it has violated 29 U.S.C. §2615.

92. Plaintiff has been damaged by the conduct of Defendant.

**WHEREFORE,** Plaintiff demands judgment as follows:

A. Grant a permanent injunction enjoining Defendant and its agents from engaging in any employment practice violative of FMLA;

B. Declare Defendant's conduct to be in violation of the FMLA and order Defendant to institute policies, practices and programs which provide equal employment opportunities for individuals and which eradicate the effects of its past and present unlawful practices;

C. Grant a judgment requiring Defendant to pay to Plaintiff any back wages and back benefits found to be due and owing to him at the time of trial, liquidated damages to be proved at trial, front pay to be proved at trial, non-economic compensatory damages and prejudgment interest thereon;

D. Grant Plaintiff his costs (including expert fees) and an award of reasonable attorney's fees; and

E. Grant Plaintiff trial by jury and such further relief as the Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint and on all other issues so triable.

Dated: December 2, 2022.

        Respectfully submitted,

        **TOBIN LAW GROUP, PL**

        */s/ Bradley A. Tobin*
        Bradley A. Tobin
        Florida Bar No. 0101818
        btobin@tobinlawgroup.com
        Westchase Commons
        13043 West Linebaugh Ave.
        Tampa, Florida 33626
        Tel: (813) 452-6199
        Fax (813) 830-7200
        Attorney(s) for Plaintiff.